IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

PHILLIP LEE KELLEY,                        )
                                           )
        Plaintiff,                         )
                                           )
        v.                                 )        Case No. CIV-25-856-R
                                           )
JASON SPARKS, et al.,                      )
                                           )
        Defendants.                        )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, has filed a Complaint alleging violation of his civil rights under 42 U.S.C. § 1983. (Doc. 1). United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B)–(C). (Doc. 4). Plaintiff asserts a failure to protect claim under the Eighth Amendment. (Doc. 1). Having conducted a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A(a), the undersigned recommends that the court **DISMISS** all of Plaintiff's claims against Defendants.

## I.    Plaintiff's Complaint

Plaintiff is currently incarcerated at the Dick Conner Correctional Facility in Hominy, Oklahoma. *See* Oklahoma Department of Corrections OK Offender, https://okoffender.doc.ok.gov/ (OK DOC# 183039). His claims arise out of his incarceration at the Lexington Assessment and Reception Center ("LARC"). In his Complaint, Plaintiff claims that three prison officials—Jason Sparks, the then-Deputy Inspector General of the Oklahoma Department of Corrections ("ODOC"); David Louthan,

the Warden at LARC; and Mandy Perry, a Unit Manager at LARC—failed to protect him from a violent inmate in violation of his Eighth Amendment rights. (Doc. 1, at 3–4). Specifically, Plaintiff claims that in February 2024 he was attacked by an inmate who broke one of Plaintiff's orbital bones. (*Id.* at 4). According to Plaintiff, this inmate was Defendant Perry's unit orderly, and he was involved in the attack of two other inmates around the same time. (*Id.*) Plaintiff claims that while he did not initially report the attack because "the relationship of the Offender and Unit Manager Perry" meant "nothing good would come" from raising his grievances, Plaintiff eventually did discuss the attack with Perry. (*Id.*) Plaintiff claims that, in exchange for writing a statement on the attack, Perry promised to send the violent inmate to the facility's Special Housing Unit (SHU) but never completed her end of the deal. (*Id.*)

Plaintiff alleges that Defendant Sparks, as Deputy Inspector General, investigated Perry during this time and found independent evidence that Perry had the violent inmate perform "nefarious jobs allegedly in her name," among other things, but Sparks never did anything with the information. (*Id.* at 4–5). Moreover, Plaintiff claims to have an "internal memo from the Warden" explaining that the decision not to move the violent inmate to another location came from Defendant Louthan, at Defendant Perry's request. (*Id.* at 4). Following the conversation with Perry, Plaintiff attempted several times to notify other officials in the prison that the violent inmate was supposed to be transferred to another location, and while they were receptive to Plaintiff's concerns, Defendants allegedly foiled these attempts and retaliated against Plaintiff by removing him from his unit, setting other inmates against him, and putting him in the SHU. (*Id.* at 4–5). Plaintiff asserts that ODOC

is protecting the violent inmate "by some written or unwritten policy or deal struck with [him]" and that "his presence at that Low Medium Security facility poses a threat to others security, health, and wellbeing." (*Id.* at 6).

According to Plaintiff, these actions violated his Eighth Amendment rights because all three "defendants . . . knew of and disregarded an excessive risk to the Plaintiff's health and safety" when they "fail[ed] to remove the offender(s) responsible for the assaults and only remov[ed] the Plaintiff and the other inmates assaulted." (*Id.* at 5). Plaintiff sues all three Defendants in both their official and individual capacities and seeks ten million dollars in money damages and an additional three million dollars in punitive damages. (*Id.* at 4, 6).

## II.     Screening

Federal law mandates the screening of complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or any portion of it presenting claims that fail to state a claim upon which relief may be granted. *Id.* at § 1915A(b).

The court's review of a complaint under § 1915A(b)(1) mirrors that required for reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The court must accept Plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). The court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on

3

its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (internal quotation marks and citation omitted). A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted). Bare legal conclusions in a complaint, however, are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (noting that although courts construe *pro se* pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*).

A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*). But the

court cannot serve as Plaintiff's advocate, creating arguments on his behalf.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

**III.    Plaintiff's Claims Against All Defendants in Their Official Capacities Should Be Dismissed.**

"Neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and thus cannot be sued for money damages under the statute.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also id.* at 70 (noting that the holding also applies to "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes").  Here, Plaintiff is suing three employees of the ODOC in both their official and individual capacities.  However, the ODOC "is an arm of the state," not a person.  *Berry v. Oklahoma*, 495 F. App'x 920, 922 (10th Cir. 2012).  Therefore, the claims against Defendants as they relate to actions taken in their official capacities at the ODOC should be dismissed.  *See, e.g.*, *Carmichael v. Allbaugh*, No. 20-CIV-109-D, 2020 WL 6495528, at *2 (W.D. Okla. Nov. 4, 2020) (dismissing § 1983 claim against ODOC employee sued in official capacity); *Christian v. Thompson*, No. 18-CIV-699-G, 2019 WL 4920885, at *2 (W.D. Okla. Oct. 3, 2019) (same).

**IV.    Plaintiff Has Not Stated an Eighth Amendment Claim Against Defendants in Their Individual Capacities.**

Even liberally construed, Plaintiff's Complaint does not state a failure to protect claim against Defendants in their individual capacities.  The Eighth Amendment "imposes duties" on prison officials, including the duty to "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted).  This duty requires that prison officials "protect prisoners from

violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Moreover, "a prison official must have a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"There exists no precise definition of those types of conditions of confinement that violate the first prong of" the failure-to-protect test. *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996). "This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by . . . separating the prisoner from other inmates who previously have attacked him on multiple occasions." *Id.* (citing *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614 (2d Cir. 1996); *Horton v. Cockrell*, 70 F.3d 397, 399 (5th Cir. 1995)). Thus, "prison officials have a constitutional duty to take reasonable measures to protect prisoners against *current* threats of attack and other *sufficiently imminent* dangers . . . likely to cause harm." *Id.* (emphasis added).

6

Plaintiff alleges that he was assaulted by the violent inmate, but he does not allege that prior to the attack he himself or any of the Defendants knew of any facts from which an inference could be drawn that he was at risk of being attacked by that inmate. Indeed, while Plaintiff alleges that Defendant Perry incited the violent inmate to request or direct other inmates to assault "inmate 57," he does not similarly allege that Defendant Perry initiated his own assault. Plaintiff does not allege that immediately after the assault he was at substantial risk of being assaulted by this inmate again, and moreover he concedes that he did not report the assault to anyone because he "felt that because of the relationship of the Offender and Unit Manager Perry, nothing good would come of it." (Doc. 1, at 4). Thus, immediately after the assault, no Defendant was aware of any facts from which to draw an inference that Plaintiff was at risk of any harm.

Plaintiff alleges that approximately a month or two after the assault, Defendant Perry became aware of it from another inmate and asked Plaintiff to write a statement about it. (Doc. 1, at 4). Plaintiff alleges he agreed to do so on condition that the violent inmate would be sent to the SHU. (*Id.*) When the violent offender was not sent to the SHU, the Plaintiff confronted Defendant Perry and complained to other prison staff, and Defendant Louthan and Defendant Sparks eventually became aware of the issue. (*Id.* at 4–5). Defendant Perry allegedly convinced Defendant Louthan not to transfer the violent inmate from LARC, and instead Defendant Louthan moved Plaintiff from Perry's unit to another unit where "he was confronted by other inmates whom claimed that the Plaintiff had written a statement on Mrs. Perry and that he would receive a beating if he did not leave." (*Id.* at 5). Upon reporting this threat, Plaintiff was moved to "Central" and then to the

SHU.  (*Id.*)  Plaintiff was questioned in the SHU by Defendant Sparks, who allegedly was not interested in information about the assaults and merely "wish[ed] him 'luck' on getting a transfer to his prison of choice."  (*Id.*)

Construing Plaintiff's allegations and the inferences therefrom in the light most favorable to Plaintiff, after he reported the assault to Defendant Perry he feared that the violent inmate and/or other inmates would retaliate against him with another assault, and he communicated that fear in a way that came to the attention of the Defendants.  Thus, at that point in time, Plaintiff was arguably at substantial risk of serious harm and Defendants were aware of that fact.  However, Plaintiff fails to sufficiently allege that Defendants *disregarded* the risk and "continually refuse[d] to make the situation safer."  *Grimsley*, 93 F.3d at 681.  Rather, Plaintiff was moved away from the violent inmate and the inmates who threatened him with a beating.  While Plaintiff asserts that the prison officials did not "take responsible measures to address the problem by failing to remove the offender(s) responsible for the assaults and only removing Plaintiff and the other inmates assaulted," (Doc. 1, at 5), the actions of the prison officials were "reasonable measures [designed] to guarantee the safety of" Plaintiff.  *Farmer*, 511 U.S. at 832.

Thus, Plaintiff's claims against Defendants in their individual capacities should be dismissed for failure to state an Eighth Amendment claim for failure to protect.

## V.    Recommendation and Notice of Right to Object

For the reasons stated, the undersigned recommends that Plaintiff's claims against Defendants in both their official and individual capacities be **DISMISSED**.

8

**The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of Court by October 28, 2025**, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 7th day of October, 2025.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE